(39 App. Div. 196.)

### FLEMING v. BUSWELL et al.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Some feet above the floor of a mill was a horizontal shaft, connected with machinery below by a belt, which, when in use, rested on a tight pulley on the shaft; and when not, on a loose pulley. A safe instrument was provided with which to shift the belt from one pulley to the other, and, to do so, it was necessary to get upon a raised platform. *Held*, that if the employé whose duty it was to shift the belt used his hands in doing so, and the sudden moving of the belt caused him to step on the edge of the platform, which gave way, he was guilty of negligence, and the employer would not be liable, though the edge of the platform was defective.

McLennan and Spring, JJ., dissenting.

Appeal from trial term, Cattaraugus county.

Action by Fred Fleming against Charles H. Buswell and others. A verdict was rendered for plaintiff, and from a judgment entered thereon, and from an order denying a new trial, defendants appeal. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

Fred L. Eaton, for appellants.
F. W. Kruse, for respondent.

FOLLETT, J. This action was begun September 26, 1896, to recover damages for a personal injury caused, it is alleged, by the negligence of the defendants, who are partners under the firm name of Buswell, Hubbard & Co., and engaged in tanning hides at Olean, N. Y. The plaintiff had been employed in tanneries at Latonia, Pa., and at Elmira, N. Y., for 3½ years before he was first employed, in May, 1895, by the defendants, for whom he then worked about 3 months. About May 25, 1896, the plaintiff again entered defendants' service, as a grinder of bark, and continued until June 3, 1896, when he was injured. The bark mill operated by the plaintiff was in a building about 20 feet square and 18 feet high, and is known as the "bark shed" or "bark house." The power which operates the bark mill is furnished by a steam engine located in the engine house, from which a horizontal shaft extends through the upper part of the bark house, and over the bark mill, and is connected with it by a perpendicular shaft extending down to the bark mill. Connected with the bark mill is a bark carrier, which removes from the mill the ground bark. The power which operates the bark carrier is communicated by another horizontal shaft, extending from the engine house through the upper part of the bark shed, about 15 feet above the floor, which shaft is connected with the bark carrier by a belt. On this horizontal shaft there is a tight pulley, and by the side of

the tight pulley is a loose pulley. When the bark mill and carrier were in operation, the belt connecting the carrier with the shaft was on the tight pulley. In the afternoon of June 2, 1896, an accident occurred to the bark mill, which made it improper to continue its use until repaired; and the plaintiff, before leaving his work, threw the bark mill out of gear, so that the power communicated by the perpendicular shaft would not set the mill in motion. On the morning of June 3d, when the plaintiff entered the bark shed, the horizontal shaft, which by means of the belt communicated power to the bark carrier, was in motion; the belt being on the tight pulley. The result was that friction was caused, and the belt was in danger of being injured by the heat so developed. Underneath the two horizontal shafts and pulleys was a platform 10 or 12 feet in length, and about 3 feet in width, constructed of three hemlock planks, which was about 12 feet above the floor of the bark house. This platform was approached by an inclined plane, made of planks, extending from the floor of the bark house to the level of the platform. It was part of the daily duty of the plaintiff to pass up the inclined plane, enter upon the platform, and oil the machinery above while standing on the platform, which duty he had performed during the nine days he had been employed by the defendants. For the purpose of preventing the friction between the belt and tight pulley, caused by the motion of the shaft, the plaintiff entered upon the platform, and attempted to shift the belt from the tight to the loose pulley. To facilitate shifting the belt from one pulley to the other, a belt shifter was provided by the defendants, which it was the duty of the plaintiff to use. He testified, "I had taken the belt off lots of times, and it went off easily." After making two ineffectual attempts to change the belt from the tight to the loose pulley by means of the belt shifter, he fell to the floor below, fracturing and dislocating his left elbow, spraining his left ankle, and bruising his left side.

The crucial question is, precisely how was the accident caused? The plaintiff asserted that one of the outside planks of the platform was not securely supported or fastened in place, and that when he stepped on the outer edge of this plank it tipped down under his weight, and he was precipitated to the floor, 12 feet below. The plaintiff testified that when he felt the plank giving way under him he seized hold of the belt (a part of which had been changed from the tight to the loose pulley, and was in motion) to support himself, and was carried by the belt a little distance before he fell to the floor below. The defendants contend that the accident was caused by the plaintiff neglecting to use the belt shifter, and attempting to shift the belt with his hands, and that while so attempting to make the change he was injured by the belt and pulleys, and thrown to the floor by the moving belt, and that the accident was not caused by an insecure plank. In case the accident was solely caused by the defendants furnishing a dangerous platform on which the plaintiff was required to work, the defendants are liable for the consequences; but if, on the other hand, the plaintiff was injured by negligently discarding the use of the belt shifter, concededly a safe

implement, and attempting to shift the belt with his hands, the de-fendants are not liable, for the accident was the result, in part, of the plaintiff's contributory negligence. The jury found, after a sharply-contested trial, that the accident was caused by the tipping of the insecure plank. The court was requested by the defendants to charge "that if the plaintiff attempted to shift the belt by taking hold of it with his hands, and he was caused to step back by reason of his being carelessly in close proximity to the belt when it started, he cannot recover, even if they find that the outer edge of the plat-form tipped." This request embraces the proposition that in case the jury found that the accident was initiated by the attempt of the plaintiff to shift the belt with his hands, instead of with the belt shifter, and, to carry out this purpose, he stepped upon a loose plank and fell, the defendants are not liable. The learned trial court de-clined to charge on this question differently from what it had char-ged, and an exception was taken. An examination of the charge fails to disclose any instruction upon this proposition. The court had instructed the jury that, in case they sustained the plaintiff's theory as to the cause of the accident, he was entitled to recover, but, in case they sustained the defendants' theory as to the cause of the accident, the plaintiff could not recover. The court did not instruct the jury that in case they found that the plaintiff, in a negligent at-tempt to shift the belt with his hands instead of with the belt shift-er, was, by the motion suddenly imparted to the belt, caused to step away from it, and upon a plank negligently left insecured, the de-fendants would not be liable, because the accident occurred from two concurring causes, one of which was brought into existence by the plaintiff's negligence, and directly contributed to bring into oper-ation, or render effective, the other cause. While the two causes mentioned in the request to charge, if found by the jury to exist, were not concurrent in the sense of occupying exactly the same space of time (coincident or contemporaneous), they were concurrent in the sense of acting conjointly, and connectedly co-operating and con-tributing to produce the result (the accident). Whart. Law Dict.; Murray, Dict.; Cent. Dict. Concurrent causes, as secondly defined, have the same legal effect in the law of negligence as those first de-fined. There was evidence which would have sustained a finding that the accident occurred in the manner indicated by the request. Defendants' superintendent testified that he saw the plaintiff im-mediately after the accident, and asked him how it occurred, "and he [plaintiff] said he took hold of the belt to put it onto the loose pulley, and the belt threw him." The plaintiff testified:

"Of course, I was not so very close; but, as soon as the belt began to move, it jerked a little, and I stepped back close to the loose plank at the edge, and the plank moved a little under my feet. Of course, I could not get onto any-thing else, and I grabbed the belt, or I had to fall."

I think the court erred in refusing this instruction, for the reason that, if the jury had found that the accident was caused in the man-ner indicated by the request, the negligent act of the plaintiff di-rectly contributed to cause the accident.

For this error the judgment and order should be reversed, and a

new trial granted, with costs to the appellants to abide the event. All concur, except McLENNAN and SPRING, JJ., who dissent.

The action was commenced on the 26th day of September, 1896, to recover for injuries sustained by the plaintiff in an accident which occurred on the 3d day of June, 1896, alleged to have been caused by the negligence of the defendants. At the time in question the defendants were co-partners, engaged in the tannery business, in the city of Olean, N. Y. They occupied a building for such purpose, in which there was a line shaft (so called) extending its entire length, and used for the purpose of propelling machinery by means of belts which went upon pulleys upon such shaft. At the place of the accident, and under or near said shaft, the defendants had erected a platform for their employés to go upon whenever it became necessary for them to shift a belt from a loose to a tight pulley, or vice versa. It was intended that such belt should be shifted from one pulley to another by means of a lever, so shaped at one end that it would catch the belt, and by moving the other end shift it from one pulley to the other. This lever was operated by a person upon the platform at such shaft. The plaintiff was in the employ of the defendants at the time of the accident, and had been continuously for nearly a month previous to that time. He was charged with the duty of looking after the machinery operated by the defendants, and his previous experience in such work was such that it may be assumed that he was reasonably familiar with such machinery, and the manner of operating it. On the day of the accident the belt connected with the shaft in question became stationary upon the tight pulley, and the friction caused it to smoke or burn; and it became necessary to move such belt from the tight pulley to the loose pulley, which would relieve the friction and stop the machinery. To do this, the plaintiff went upon the platform in question, to change the belt from the tight pulley to the loose pulley; and while so engaged the accident occurred, and the injuries complained of were received by the plaintiff.

McLENNAN, J. (dissenting). The contention of the plaintiff is, and was upon the trial, that the accident resulted because of a latent defect in the platform erected and maintained by the defendants for his use and the use of their other employés. The contention of the defendants is, and was upon the trial, that the accident resulted because of the negligent act of the plaintiff in attempting to remove the belt from the tight pulley to the loose pulley with his hands, instead of by means of the lever which the defendants had provided for that purpose. The evidence on the part of the plaintiff tended to show that he went upon the platform, in the ordinary way, to shift the belt in question; that he attempted to shift such belt by means of the lever which was provided by the defendants for that purpose; that he was unable to do so, and that when near the belt he attempted to ascertain whether such belt could not be shifted by the lever, and for that purpose looked over onto the opposite side, and that while so doing the belt suddenly started; that he thereupon stepped back on the platform, away from said belt; and that the outer board or plank of the platform tipped up, and, to save himself, he threw up his hands involuntarily, caught hold of the then moving belt, and was carried some distance, where he fell, and sustained the injuries complained of. The evidence on the part of the defendants tended to show that the plaintiff went upon the platform in question, attempted to move the belt from the tight pulley to the loose pulley by means of the lever provided for that purpose, and, being unable to do so, he took hold of the belt with his hands for the purpose of shifting it; that the belt then started to move; that he clung to it, and was carried to the

place where he fell and sustained the injuries of which he complains. All the evidence given upon the trial was directed to one or the other of those theories. It was substantially conceded upon the trial that, if the accident happened as claimed by the defendants, the plaintiff could not recover, for the reason that he had no right to attempt to shift the belt with his hands, even if it could not be accomplished by the use of the lever,—the means provided by the defendants for that purpose. There was a sharp contest as to whether or not the platform furnished by the defendants for the use of the plaintiff and their other employés was defective. In that regard the evidence was to the effect that the outer board or plank was not nailed, but was in such condition that, if a person stepped upon it, it would tip up and cause him to fall, and that this condition, owing to the accumulation of oil and dirt upon the platform, could not be discovered by the plaintiff in the exercise of ordinary care and prudence. The evidence upon that question was sufficient to require that it be submitted to the jury. The evidence was also of such a character as required the determination of the jury as to how the accident occurred,—whether as claimed by the plaintiff, or as claimed by the defendants. If the accident occurred as claimed by the plaintiff, and the defendants were negligent in the construction or maintenance of the platform, and that was the cause of the injury, the plaintiff is entitled to recover. If, upon the other hand, the accident resulted because of the negligence of the plaintiff in attempting to shift the belt with his hands, instead of with the lever provided by the defendants, the plaintiff cannot recover. The learned trial justice, in his charge to the jury, recites all the material facts disclosed by the evidence, and distinctly and unequivocally states the respective claims of the parties, and charges the jury explicitly that, if the accident resulted as claimed by the defendants, no recovery can be had, but that, if it resulted as claimed by the plaintiff, and they find that the defendants were negligent in the construction or maintenance of the platform in question, and that such negligence caused the injury, then the plaintiff is entitled to recover. The learned trial justice, in his charge to the jury, said:

"The belt was burning or smoking. Of course, it became his duty at the time to protect the property for his employer. The best thing that occurred to him was to notify the engineer to stop the power. He went up to the engine house for that purpose,—and that was near where he was at work, separated only by the brick wall from the bark house,—and was unable to find the engineer. He looked for another man, whom he names, and was unable to find him. He then returned to the bark house (the place where the shaft in question was), went upon this platform, and by means of the shifter undertook to change the belt over onto the loose pulley, and in that way protect it. It was his duty to do this, in the interest of his employer. It was his duty to do it in just the manner he attempted to do it, because that was the manner provided by his employer; and, so far as the evidence shows, it was a proper manner. He was unable to shift the belt by means of the shifter, and, imagining that something was in the way on the other side, out of his sight, his statement is that he went up to the belt, leaned over for the purpose of looking on the other side, and, having got the belt over an inch or two onto the loose pulley, while he was looking over in that way it started, and the belt raked against him, as he describes it, and he stepped back out of the way of it, free of it, stepping upon the outside plank of the platform, which tipped and allowed him to fall; and in the act of falling he reached for some support, and grabbed or caught hold of the belt, and was carried some distance off from the plat-

form, and dropped in the vicinity of the bark mill, receiving the injury which is complained of. That is substantially the claim of the plaintiff as to the manner in which he was injured. The claim of the defendants is that he was injured in an altogether different way. Their claim is that he went upon this platform, attempted to shift the belt by the use of the shifter, and, failing in that, he undertook to draw it over with his hands, taking hold of it, and in the act of drawing it over in that way he got it over far enough so that motion was established, and he was carried by the belt to the place where he received the injury. That difference in the claims of the parties presents substantially the question to be tried by you, and decided; and, when you have decided that question, there is very little more of this case for you to consider. All of the evidence which has been given, both by the plaintiff and the defendants, has been given to sustain either the one or the other of these claims."

We think the learned trial justice stated substantially the claims of the respective parties, and that he was correct in the statement that all of the evidence which had been given, both by the plaintiff and defendants, was given to sustain one or the other of those claims.

The court further said:

"He (the plaintiff) had no right, if he was unable to accomplish his purpose of saving the property by the use of such appliances as had been provided, or in a reasonable and prudent way, without unnecessarily subjecting himself to injury, to go any further with it. He should have let it perish, because he was not called upon to submit himself to injury for the purpose of saving the property, even if it had burned the belt or the property itself."

Again the court said:

"And that presents the defendants' side of the question. Their claim is that after he had attempted to shift the belt by the use of the appliances provided by the defendants, which were adequate, that he attempted to do it in a careless manner, that he thereby subjected himself unnecessarily to injury, and that that did result—that carelessness—in the injury which he received. In other words, they claim that he went to the pulley after having tried the other means, took the belt in his hands, and attempted to shift it in that way, and that while he was engaged in that act the belt started, and carried him off the platform. That presents their side of it. Now, gentlemen, if that is true,—if that is the way this accident happened,—the plaintiff cannot recover in this case."

Again the court said:

"If you find that the plaintiff was injured in the way claimed by him, and that the master had failed to discharge his duty by leaving this plank unfastened and in the condition in which he describes it, then the plaintiff is entitled to recover. If you find that that was not the cause of the accident,—that the plaintiff was engaged in shifting the belt with his hands, and while engaged in that act was carried off the platform and injured,—then he cannot recover. And, for the purpose of ascertaining what the fact is, you are to examine all the evidence which has been given by either side, or by any witness who has been called in the case."

It will be seen that the court charged, in substance, that, if the accident resulted because of the attempt on the part of the plaintiff to shift the belt with his hands, no recovery could be had. It was the contention upon the trial, and the sole contention, of the defendants, that this the plaintiff did, and, therefore, that he could not recover. It was the contention, and the sole contention, of the plaintiff, upon the trial, that he did not attempt to change the belt with his hands, but that, while examining it, it started; that he then stepped back, and stepped upon the loose plank, which tipped and caused the injury. No fault was found by the defendants' counsel with the statement of the

trial justice as to the claims of the respective parties. No exception was taken to anything that was said in that regard. So far as it appears, the statement of the trial justice was accepted as presenting the precise issues involved in the case.

After the charge of the court, the counsel for the defendants made the following request:

"I request the court to charge the jury that if the plaintiff attempted to shift the belt by taking hold of it with his hands, and he was caused to step back by reason of his being carelessly in close proximity to the belt when it started, he cannot recover, even if they find that the outer edge of the platform tipped. The Court: I decline to change my charge on that question."

And defendants' counsel duly excepted.

It is now urged that, because the court declined to charge as requested, a new trial should be granted. If we correctly interpret the charge of the learned trial justice, it was to the effect that, if the plaintiff attempted to shift the belt by taking hold of it with his hands, no recovery could be had; and therefore the charge was as favorable to the defendants as if it had been made in the words of the request. As before said, upon the evidence in this case the issue presented was sharp and distinct. Did the plaintiff attempt to shift the belt from one pulley to the other by taking hold of it with his hands? If so, the court charged, in substance, that the plaintiff could not recover. If the request had been, "If the plaintiff, after attempting to shift the belt, went carelessly in close proximity to it, and by reason of such carelessness the accident resulted, he cannot recover," if such request had been refused the defendants might have cause to complain. But the court having charged, in effect, that, if the plaintiff attempted to shift the belt with his hands, no recovery could be had, we cannot perceive any theory upon which the defendants were prejudiced by the refusal to charge as requested. The charge of the learned trial justice fairly presents the salient points of the evidence, clearly presents the claims of the respective parties, and correctly states the principles of law involved; and we think that while the request to charge states a sound proposition of law, in the abstract, it had no application to the facts in this case.

It is not claimed that the plaintiff was not seriously injured, or that the amount of the verdict was excessive.

The conclusion is reached that the judgment and order appealed from should be affirmed, with costs.

SPRING, J., concurs.

Judgment and order reversed, and a new trial ordered, with costs to the appellants to abide the event.